BLANK ROME LLP
Mark S. Greenfield (SBN 61344)
Greenfield@BlankRome.com
Cheryl S. Chang (SBN 237098)
Chang@BlankRome.com
Jessica A. McElroy (SBN 299919)
JMcElroy@BlankRome.com
2029 Century Park East, 6th Floor
Los Angeles, CA  90067
Telephone:   424.239.3400
Facsimile:    424.239.3434

Attorneys for Plaintiff
GLOBAL FOOD INNOVATIONS, INC.

# THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| GLOBAL FOOD INNOVATIONS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>WESTERN PROPERTY MANAGEMENT, LLC, a Nevada limited liability company; MARC MIRO, an individual; JACK WISE, an individual; JEFFREY COVEY, an individual; GERALD NORMAN, an individual; JAMES TERAN, an individual; SOLID GOLD FOODS, INC., a Delaware corporation; COMMERCIAL INTERNATIONAL CORPORATION, a Delaware corporation; MICRO-TENDER INDUSTRIES, INC., a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>**(1) CONVERSION**<br>**(2) FRAUD**<br>**(3) BREACH OF FIDUCIARY DUTY**<br>**(4)  BREACH OF DUTY OF LOYALTY (CAL. LABOR CODE §§ 2854 AND 2859)**<br>**(5) BREACH OF DUTY OF CARE**<br>**(6) BREACH OF DUTY OF LOYALTY**<br>**(7) BREACH OF CONTRACT**<br>**(8) UNJUST ENRICHMENT**<br>**(9) CIVIL CONSPIRACY**<br>**(10)  CIVIL CONSPIRACY**<br>**(11)   CIVIL RICO, 18 U.S.C. § 1962(c)**<br>**(12)   CIVIL RICO, 18 U.S.C. § 1962(d)**<br>**(13)   CIVIL RICO, 18 U.S.C. § 1962(c)**<br>**(14) CIVIL RICO, 18 U.S.C. § 1962(d)**<br><br>JURY TRIAL REQUESTED |

143703.00601/95254625v.1

**COMPLAINT**

Plaintiff GLOBAL FOOD INNOVATIONS, INC. ("GFI") hereby alleges as follows:

## INTRODUCTION

1.      This case arises from certain directors, officers and key employees of a company, plaintiff GFI, fraudulently converting millions of dollars of the company's corporate funds to their own use via the creation of an elaborate labyrinth of entities. These entities were formed and/or utilized with the appearance of benefitting the company, GFI, but in reality served solely to benefit the wrongdoers by facilitating their scheme to abscond with corporate funds.  The bad actors structured the labyrinth so that the outside entities appeared to be legitimately involved in the operations of GFI.  However, in actuality, the defendants used the entities to fraudulently funnel funds from GFI so that they could convert them to their own personal use.  An internal investigation conducted by GFI has revealed that these directors, officers and key employees caused GFI to make numerous fraudulent transfers, including wire transfers, to the entities.  The transfers were made without support or authority and include millions of dollars in payments disguised in the form of management services fees, salaries, and phantom intercompany loans.  GFI now brings this suit in an effort to recover the wrongly converted funds and to hold responsible the directors, officers and key employees who conspired to defraud, and did defraud, GFI in this scheme.

## THE PARTIES

2.      GFI is, and at all times herein mentioned was, a corporation duly organized and existing under the laws of the State of Delaware.  GFI is engaged in the international food business, most specifically poultry processing

3.      GFI is informed and believes, and based thereon alleges, that defendant Marc Miro ("Miro") is an individual residing in Los Angeles County, State of California.  Miro is the former President and Chief Executive Officer ("CEO") of GFI. Miro is no longer an officer or an employee of GFI.

1

**COMPLAINT**

4.     GFI is informed and believes, and based thereon alleges, that defendant Jack Wise ("Wise") is an individual residing in Fresno County, State of California. Wise is a former officer and vice president of administration of GFI. Wise is no longer an officer or an employee of GFI.

5.     GFI is informed and believes, and based thereon alleges, that defendant Jeffrey Covey ("Covey") is an individual residing in Fresno County, State of California. Covey is the former Controller of GFI. Covey is no longer an officer or an employee of GFI.

6.     GFI is informed and believes, and based thereon alleges, that defendant Gerald Norman ("Norman") is an individual residing in Los Angeles County, State of California. Norman is currently a member of the Board of Directors ("Board") of GFI.

7.     GFI is informed and believes, and based thereon alleges, that defendant James Teran ("Teran") is an individual residing in Denver County, State of Colorado. Teran is the former Interim CEO of GFI. Teran is no longer an officer or an employee of GFI. Teran refuses to resign his position as a member of the Board of GFI.

8.     GFI is informed and believes, and based thereon alleges, that defendant Western Property Management, LLC ("Western Properties") is, and at all times herein was, a Nevada limited liability company registered to conduct business in the State of California. Western Properties is not related to or an affiliate of GFI. Based on information and belief, Norman is the sole shareholder of Western Property Management.

9.     GFI is informed and believes, and based thereon alleges, that defendant Solid Gold Foods, Inc. ("Solid Gold") is, and at all times herein was, a Delaware corporation. Solid Gold is not related to or an affiliate of GFI. Based on information and belief, Teran is, or was, a majority shareholder of Solid Gold and he remains a beneficial owner of Solid Gold.

10.     GFI is informed and believes, and based thereon alleges, that defendant Commercial International Corporation ("CIC") is, and at all times herein was, a Delaware corporation registered to conduct business in the State of California.  GFI is further informed and believes, and based thereon alleges, that CIC acquired Solid Gold in or about late 2005 or early 2006.  Based on information and belief, CIC is, and at all times herein was, under the control of either or both Teran and Wise.  Based on further information and belief, Teran is the president of and a director of CIC.

11.     GFI is informed and believes, and based thereon alleges, that defendant Micro-Tender Industries, Inc. ("Micro-Tender") is, and at all times herein was, a Delaware corporation.  Based on information and belief, Teran is, or was, the president of Micro-Tender.

12.     GFI does not know the true names or capacities of the defendants sued herein as DOES 1 through 50, inclusive.  GFI is informed and believes, and based thereon alleges, that each of the defendants sued as DOES 1 through 50, inclusive, are the agents, employees, partners, joint venturers, or alter egos of the known defendants.  At such time as the true names of DOES 1 through 50, inclusive, become known to GFI, GFI will amend this Complaint to insert the true names and capacities of such defendants by appropriate substitution.

13.     GFI is informed and believes, and based thereon alleges, that at the time of the acts, conditions, and events alleged in this Complaint, each of the defendants was acting as the agent, servant, employee, officer, director, partner, joint venturer, principal, master, employer, and/or alter ego of each of the other defendants and is liable, directly and/or vicariously, for the wrongful acts and omissions of each of the defendants that are the subject of this Complaint.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction over the claims for relief arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961, *et*

1  *seq.*, pursuant to 28 U.S.C. § 1337, and supplemental jurisdiction exists over the state

2  law causes of action pursuant to 28 U.S.C. § 1367(a).

3      15.    Venue is proper in this Court under 28 U.S.C. § 1391(b) because a

4  substantial part of the events giving rise to the claims asserted herein occurred within

5  this judicial district, in that the acts of wire fraud, conversion, conspiracy, breach of

6  fiduciary duty, and fraud occurred within this judicial district.  Venue is also proper in

7  the Central District of California under 18 U.S.C. §§ 1381(b) and 1965(a) because

8  Norman resides in this judicial district and Covey, Norman, Wise, Western Properties,

9  CIC, Solid Gold, Miro, Teran and Micro-Tender (collectively, the "Defendants")

10 transact business within this judicial district.

## GENERAL ALLEGATIONS

12     16.    For a period of over two years, GFI was managed by a board of directors

13 and officers who manipulated the operations and financial structure of GFI in a

14 manner that benefitted certain of its directors, officers and key employees, including

15 Miro, Wise, Covey, Norman, and Teran, to the detriment of GFI itself.

16     17.    GFI is informed and believes, and based thereon alleges that Miro, Wise,

17 Covey, Norman, and Teran set up an elaborate ruse of smaller entities under the guise

18 that these entities were to the benefit of GFI's operational structure.

19     18.    GFI is informed and believes, and based thereon alleges that Western

20 Properties is merely a shell entity that was utilized to create the appearance of

21 employing Miro, Covey, and various other accounting personnel in order to deceive

22 GFI into paying out monies to Western Properties for the purported services of these

23 people.

24     19.    GFI is informed and believes, and based thereon alleges that Solid Gold

25 was formed to create the appearance of employing Wise and Teran in order to deceive

26 GFI into paying out monies to Solid Gold for the purported services of these people.

27     20.    On December 31, 2012, Miro, Wise, Covey, Norman, and Teran caused a

28 principal shareholder of GFI to loan GFI a total of $20,644.350.00 via aggregate

loans. Miro, Wise, Covey, Norman and Teran represented to GFI that the entirety of the $20,644.350.00 in loans was to remain in GFI's account in order to bolster the financial strength of GFI.   However, Miro, Wise, Covey, Norman, and Teran intended GFI's shareholder to make the aggregate loans with the intention of converting the funds for their own personal use.

21.     The $20,644.350.00 in loans was obtained based upon assurances that the funds would be use for proper corporate purposes. However, Miro, Wise, Covey, Norman and Teran diverted most of such funds for their own purposes.

22.     GFI is informed and believes, and based thereon alleges that Miro, Wise, Covey, Norman, and Teran converted over $5,000,000.00 of these loan monies to their own personal use via Western Properties and Solid Gold.  Despite repeated requests by GFI, Miro, Wise, Covey, Norman and Teran cannot account for the current location of the funds.

23.     To date, GFI has been unable to recover any of the funds converted by Miro, Wise, Covey, Norman, and Teran.

24.     In or around December 2012, a GFI employee noticed various irregularities in GFI's financial records in connection with securing the loans made by GFI's shareholder.  These irregularities were noticed to continue.

25.     On or about March 29, 2013, Covey submitted his letter of resignation from GFI.  A true and correct copy of Covey's March 29, 2013 letter of resignation is attached hereto as **Exhibit A**.  In the letter, Covey indicates that he is resigning because of the complicated labyrinth of entities relating to GFI.  Specifically, Covey admits that "there are just too many entities with too many loose ends that give rise to errors not normally associated in the normal course of business."  GFI is informed and believes, and based thereon alleges that these purported "errors" include the misuse of GFI's corporate funds for which Miro, Wise, Covey, Norman and Teran have been unable to account.

26.    GFI is informed and believes, and based thereon alleges that Covey submitted his letter of resignation out of fear that the irregularities in GFI's financial records that had been recently discovered by GFI's employees would expose the scheme to defraud GFI.  However, despite his letter of resignation, Covey continued to serve as the Assistant Secretary/Treasurer and Corporate Controller for GFI for nearly another year.  GFI is informed and believes, and based thereon alleges that Covey did not ultimately resign in 2013 as a result of the direction of Miro, Wise, Norman and Teran, each of whom demanded that Covey continue to facilitate their scheme to defraud GFI.

27.    On or around October 4, 2013, Covey sent an e-mail to Miro, Teran, and Wise requesting a withdrawal of $300,000.00 from GFI's money market savings account under the guise that the funds were needed to cover payroll and miscellaneous payables.  On the same day, Miro sent an e-mail to Covey, Teran and Wise approving the withdrawal of $300,000.00 in funds.  GFI is informed and believes, and based thereon alleges that these funds were not needed to or used to cover payroll or any other legitimate payable.  In reality, these funds were withdrawn as part of a continued scheme to deprive GFI of its corporate assets and divert them to Miro, Wise, Covey, Norman and Teran for their personal use.

28.    On or around November 14, 2013, Covey sent an e-mail to Miro, Teran, and Wise requesting yet another withdrawal of $200,000.00 from GFI's money market savings account under the guise that the funds were needed to cover payroll and emergency payables.  GFI is informed and believes, and based thereon alleges that these funds were not needed to cover payroll or any other legitimate payables. In reality, these funds were withdrawn as part of a continued scheme to deprive GFI of its corporate assets and divert them to Miro, Wise, Covey, Norman and Teran for their personal use.

29.    In or around April 2014, GFI retained an independent accountant to conduct an internal investigation into the irregularities.

30.     On or about January 22, 2014, Covey submitted his letter of resignation as Assistant Secretary/Treasurer for GFI.  A true and correct copy of Covey's January 22, 2014 letter of resignation is attached hereto as **Exhibit B**.  However, while Covey indicates he is resigning his role as Assistant Secretary/Treasurer, he also states he will be remaining in his role as Corporate Controller.  GFI is informed and believes, and based thereon alleges that Covey made the decision to retain the Corporate Controller position in order to continue facilitating the ongoing scheme to divert GFI's corporate funds to himself, Miro, Wise, Norman and Teran for their personal use.

31.     In or around January 2014, Covey e-mailed Miro, Teran, and Wise and indicated that all savings were exhausted and that they needed to address contingency plans.  In or around February 2014, Covey e-mailed Miro, Teran, and Wise and indicated that GFI would be once again short on covering payroll.  GFI is informed and believes, and based thereon alleges that these e-mails were a continued part of the scheme to deprive GFI of its funds and that Miro, Teran, Wise, and Covey did not have a legitimate need for funds.

32.     In or around April 2014, GFI requested a detailed breakdown of three accounts referenced in GFI's 2013 financial statements from Covey and Miro.  All accounts were labeled "consultants."  Two of the accounts referenced payments made to Solid Gold: (1) labeled as "Consultants – Solid Gold Foods (GFI)," totaling $225,099.79; and (2) labeled as "Consultants – Solid Gold Foods (Products)," totaling $201,000.00.  The third account referenced payments made to Western Properties and was labeled "Consultants – Other" and totaled $1,139,999.50.

33.     Later the same month, in April 2014, Covey and Miro responded to GFI's inquiry but did not provide a detailed breakdown of all funds in the accounts.  Instead, Covey indicated that the $1,139,999.50 of the "Consultants – Other" account was used for Western Properties' wages.  However, Covey provided GFI with an earnings recap that indicated only $607,090.58 of the nearly $1.4 million had actually

been used to pay employee wages.  When questioned as to the allocation of the remainder of the funds, Covey indicated that $44,000.00 per month was being spent on general expenses, including rent and utilities, for the Fresno office.  GFI is informed and believes, and based thereon alleges that $44,000.00 per month for commercial rent in the Fresno, California area is a grossly exaggerated figure and that these funds were not used for general expense purposes, but rather were siphoned off by Miro, Wise, Covey and Norman for their personal use.

34.     On June 10, 2014, as a result of its internal investigation, GFI terminated its use of the consulting services of Wise and Solid Gold.  GFI further indicated that all payments made by GFI on behalf of Wise were to be terminated.

35.     As a result of this internal investigation, GFI uncovered what it believes to be two elaborate schemes to misappropriate GFI funds.  GFI believes the schemes were orchestrated by Wise, and involved Miro, Covey, Norman, and Teran as willing accomplices.  The investigation also uncovered additional misuse of corporate funds as well as improper payments related to various patents.

**The Western Properties Scheme**

36.     GFI is informed and believes, and based thereon alleges that over a period of years, Miro, Wise, Covey, and Norman converted millions of dollars of GFI's funds to their own personal use and benefit under the guise that the funds were being transferred to Western Properties for legitimate purposes.  GFI is further informed and believes, and based thereon alleges that a large portion of the funds were not being used for legitimate purposes and instead were going into the pockets of Miro, Wise, Covey, and Norman.  The exact amount of the improperly converted funds is unascertainable at this time, although GFI believes it to be in the millions of dollars.

37.     Between 2011 and June 7, 2013, GFI's records do indicate that an aggregate $4,179,245.26 was transferred from GFI bank accounts to Western Properties without authorization (the "Western Properties Scheme").  Some of the

monies were accounted for in the GFI general ledger as repayment of intercompany loans.  However, GFI never authorized or made any intercompany loans to Western Properties, as Western Properties is neither related to nor affiliated with GFI. However, Western Properties is and at all relevant times was, owned by defendant Norman. Specifically, the transfers were made on these dates and in these amounts:

| 12/31/2011 | JE 109 Beg. Balances Western (Schedule A) | | 2,501,624.11 |
|---|---|---|---|
| 12/31/2012 | JE 1354 Commission due to Jack Wise SGF | | 75,000.00 |
| 5/31/2013 | JE 1208 Credit Credit expense | | 1,306.01 |
| 9/30/2013 | JE 1771 Credit Credit expense | | 636.24 |
| 10/8/2013 | PG&E | | 85.90 |
| 10/29/2013 | JE 1924 Credit Credit expense | | 277.87 |
| 11/20/2013 | Check from WP to GFI | | (150,000.00) |
| 11/29/2013 | JE 2057 Credit Credit expense | | 566.84 |
| 12/30/2013 | JE 2145 Credit Credit expense | | 786.89 |
| 12/31/2013 | JE 2245 Offset 2013 Management Fee | | (466,000.00) |
| 12/31/2013 | Adjustment  for Ultra Vires use of 2008 Management Fees | | 324,000.00 |
| 12/31/2013 | Adjustment  for Ultra Vires use of 2009 Management Fees | | 230,000.00 |
| 12/31/2013 | Adjust  for Ultra Vires use of 2010 Management Fees | | 150,000.00 |
| 12/31/2013 | Adjust  for Ultra Vires use of 2011 Management Fees | | 124,000.00 |
| 12/31/2013 | Adjust  for Ultra Vires use of 2012 Management Fees | | 228,000.00 |
| 12/31/2013 | Adjust  for Ultra Vires use of 2013 Management Fees | | 228,000.00 |
| 5/31/2014 | Adjust  for Ultra Vires use of 2014 Management Fees | | 85,961.40 |
| 1/9/2013 | JE257 | Cash wired from GFI to WP | 35,000.00 |
| 1/10/2013 | JE339 | Cash wired from GFI to WP | 10,000.00 |
| 1/16/13 | JE220 | Cash wired from GFI to WP | 5,000.00 |
| 1/24/13 | JE240 | Cash wired from GFI to WP | 30,000.00 |
| 1/30/13 | JE265 | Cash wired from GFI to WP | 10,000.00 |
| 2/7/13 | JE323 | Cash wired from GFI to WP | 20,000.00 |
| 2/8/13 | JE328 | Cash wired from GFI to WP | 10,000.00 |
| 2/8/13 | JE330 | Cash wired from GFI to WP | 20,000.00 |
| 2/12/13 | JE332 | Cash wired from GFI to WP | 10,000.00 |
| 3/20/13 | JE379 | Cash wired from GFI to WP | 30,000.00 |
| 3/4/13 | JE515 | Cash wired from GFI to WP | 10,000.00 |
| 3/6/13 | JE528 | Cash wired from GFI to WP | 30,000.00 |
| 3/15/13 | JE639 | Cash wired from GFI to WP | 10,000.00 |
| 3/22/13 | JE674 | Cash wired from GFI to WP | 25,000.00 |
| 3/25/13 | JE679 | Cash wired from GFI to WP | 30,000.00 |

**COMPLAINT**

| | | | |
|---|---|---|---|
| 4/1/13 | JE693 | Cash wired from GFI to WP | 10,000.00 |
| 4/1/13 | JE695 | Cash wired from GFI to WP | 10,000.00 |
| 4/8/13 | JE773 | Cash wired from GFI to WP | 30,000.00 |
| 4/18/13 | JE860 | Cash wired from GFI to WP | 30,000.00 |
| 4/19/13 | JE889 | Cash wired from GFI to WP | 10,000.00 |
| 4/24/13 | JE912 | Cash wired from GFI to WP | 325,000.00 |
| 4/25/13 | JE922 | Cash wired from GFI to WP | 30,000.00 |
| 5/6/13 | JE983 | Cash wired from GFI to WP | 25,000.00 |
| 5/7/13 | JE986 | Cash wired from GFI to WP | 30,000.00 |
| 5/22/13 | JE1061 | Cash wired from GFI to WP | 30,000.00 |
| 6/7/13 | JE 1137 | Cash wired from GFI to WP | 30,000.00 |
| | **Total Owed from WPM to GFI** | | **4,179,245.26** |

38.   GFI is informed and believes, and based thereon alleges, that these monies were unlawfully transferred by, or under the direction of, Miro, Wise, Covey, and Norman.

39.   GFI is informed and believes, and based thereon alleges, that these monies were wrongfully converted to and used by Miro, Wise, Covey and Norman for their personal use.

**The Solid Gold Scheme**

40.   GFI is informed and believes, and based thereon alleges that over a period of years, Miro, Wise, Covey, and Teran converted hundreds of thousands of dollars of GFI's funds to their own personal use and benefit under the guise that the funds were being transferred to Solid Gold for legitimate purposes.  GFI is further informed and believes, and based thereon alleges that the funds were not being used for legitimate purposes and instead were going into the pockets of Miro, Wise, Covey, and Teran.  The exact amount of the improperly converted funds, though GFI believes it to be in the hundreds of thousands of dollars, is unascertainable at this time.

41.   Between 2013 and May 31, 2014, GFI's records do indicate that an aggregate $325,080.00 was transferred from GFI bank accounts to Solid Gold without authorization (the "Solid Gold Scheme").  Some of the monies were accounted for in the GFI general ledger as repayment of intercompany loans.  However, GFI never

10

**COMPLAINT**

authorized or made any intercompany loans to Solid Gold, as Solid Gold is neither related to nor affiliated with GFI.  Solid Gold was owned directly by, and GFI believes is now owned indirectly by, defendant Teran. Specifically, the transfers were made on these dates and in these amounts:

| Solid Gold Note Reconciliation | |
|---|---|
| | Per GFI |
| | |
| 12/31/2013 Payments | 96,480.00 |
| Balance per G/L @ 12/31/2013 | 96,480.00 |
| 12/31/2013 GFI paid rent for Jaime's Condo | 40,500.00 |
| 12/31/2013 Payments to Solid Gold from GFI | 508,100.00 |
| Jack Wise Consulting Fees | (180,000.00) |
| Jaime Teran Consulting Fees | (180,000.00) |
| Jason Teran Consulting Fees | (66,000.00) |
| Adjusted Balance @ 12/31/2013 | 219,080.00 |
| 1/2/2014 WT to Solid Gold Foods from GFI | 420,000.00 |
| 1/13/2014 WT to Solid Gold Foods from GFI | 90,000.00 |
| 1/9/2014 WT from Solid Gold to GFI | (60,000.00) |
| 1/20/2014 WT from Solid Gold to GFI | (60,000.00) |
| 1/29/2014 WT from Solid Gold to GFI | (80,000,00) |
| 2/14/2014 WT from Solid Gold to GFI | (50,000.00) |
| 2/26/2014 WT from Solid Gold to GFI | (170,000.00) |
| 3/7/2014 WT from GFI to Solid Gold | 100,000.00 |
| 3/20/2014 WT from Solid Gold to GFI | (50,000.00) |
| 3/28/2014 WT from GFI to Solid Gold | 50,000.00 |
| 3/31/2014 WT from Solid Gold to GFI | (20,000.00) |
| 4/3/2014 WT from Solid Gold to GFI | (64,000.00) |
| 5/20/2014 WT from GFI to Solid Gold | 100,000.00 |
| WT from Solid Gold to GFI | (100,000.00) |
| 5/31/2014 Accrued Interest | |
| | |
| Total owed by Solid Gold to GFI @ 5/31/2014 | 325,080.00 |

42.   GFI is informed and believes, and based thereon alleges, that these monies were unlawfully transferred by, or under the direction, of Miro, Wise, Covey, and Teran.

11

**COMPLAINT**

43.     GFI is informed and believes, and based thereon alleges, that these monies were wrongfully converted to and used by Miro, Wise, Covey and Norman for their personal use.

44.     GFI is further informed and believes, and based thereon alleges, that there exists a unity of interest and ownership between Solid Gold, on the one hand, and CIC, on the other hand.   On information and belief, Solid Gold has been at all times completely controlled, dominated, managed, and operated by CIC and/or Teran and/or Wise as their alter ego, and for their own personal benefit, such that any individuality and separateness between Solid Gold, on the one hand, and CIC and/or Teran and/or Wise, on the other hand, has ceased, and CIC and/or Teran and/or Wise are the alter ego of Solid Gold, because the activities and business of Solid Gold was or is carried out without maintaining proper formalities, and Solid Gold is a mere shell, instrumentality, sham, and conduit without adequate capital, assets, units, or unit holders or was so inadequately capitalized that, compared with the business to be done by Solid Gold and the risks of loss, its capitalization was illusory.

**The Patents**

45.     On or about August 16, 2001, Teran assigned various patents to Micro-Tender.  Thereafter, GFI licensed the patents from Micro-Tender pursuant to the terms of a patent license agreement ("Patent Agreement") entered into between Micro-Tender and GFI on April 30, 2004.  A true and correct copy of the Patent Agreement is attached hereto as **Exhibit C.**  Specifically, Teran assigned the following patents to Micro-Tender on the following dates:

| Patent Number | Filing Date | Assignor | Assignee | Execution Date of Assignment | Recordation Date | Application/Patent Status |
|---|---|---|---|---|---|---|
| US5512015 A | Jun 6, 1995 | James Teran | Micro-Tender Industries, Inc. | August 16, 2001 | August 27, 2001<br><br>Reel/Frame: 12103/739 | Patent Expired – Due to Non-Payment of Maintenance Fee (05/26/2008) |

12
**COMPLAINT**

| | | | | | | |
|---|---|---|---|---|---|---|
| US6814989 B2 | Oct 16, 2001 | James F. Teran | Micro-Tender Industries, Inc. | December 4, 2001 | December 20, 2001<br><br>Reel/Frame: 12386/704 | Patent Expired – Due to Non-Payment of Maintenance Fee (11/09/2012) |
| US6537598 B1 | Jan 18, 2002 | James F. Teran | Micro-Tender Industries, Inc. | January 17, 2002 | January 18, 2002<br><br>Reel/Frame: 12519-738 | Patent Expired – Due to Non-Payment of Maintenance Fee (03/25/2007) |
| US20030118693 A1 | Oct 16, 2001 | James F. Teran | Micro-Tender Industries, Inc | December 4, 2001 | December 20, 2001<br><br>Reel/Frame: 12386/645 | Application Expressly Abandoned -- During Examination (06/21/2004) |
| US7250184 | Apr 29, 2005 | Jaime Francisco Teran | Micro-Tender Industries | April 29, 2005 | April 29, 2005<br><br>Reel/Frame: 16521/322 | Patent Expired – Due to Non-Payment of Maintenance Fee (07/31/2011) |

46.     GFI paid various maintenance fees associated with the patents. However, GFI is informed and believes, and based thereon alleges, that payment of the maintenance fees was Micro-Tender's obligation.  GFI is informed and believes that Teran caused GFI to pay for various maintenance fees associated with the patents in a continuing scheme to use the assets of GFI for his own personal benefit.

47.     Pursuant to the Patent Agreement, GFI also paid various royalty fees to Micro-Tender.  However, GFI is informed and believes, and based thereon alleges, that each of the patents lapsed during the term of the Patent Agreement, yet Teran and Micro- Tender did not notify GFI of the lapse and instead continued to  direct GFI to continue to pay royalty payments for patents which had expired.  Thus, GFI paid royalty payments to Micro-Tender for patents in which Micro-Tender had no legal interest.

48.     GFI is informed and believes, and based thereon alleges, that there exists a unity of interest and ownership between Micro-Tender, on the one hand, and Teran, on the other hand.  On information and belief, Micro-Tender has been at all times

completely controlled, dominated, managed, and operated by Teran as his alter ego, and for his own personal benefit, such that any individuality and separateness between Micro-Tender, on the one hand, and Teran, on the other hand, has ceased, and Teran is the alter ego of Micro-Tender, because the activities and business of Micro-Tender was or is carried out without maintaining proper formalities, and Micro-Tender is a mere shell, instrumentality, sham, and conduit without adequate capital, assets, units, or unit holders or was so inadequately capitalized that, compared with the business to be done by Micro-Tender and the risks of loss, its capitalization was illusory.

**Other Improper Dealings**

49.    GFI is informed and believes, and based thereon alleges, that Teran used GFI funds without authorization in order to pay for his own personal condominium, under the guise that he was using the condominium for "the storage of the patents."

50.    GFI is informed and believes, and based thereon alleges, that Teran used GFI funds without authorization to purchase large quantities of meat in order to perform various tests of meat tenderizing prototypes for the benefit of other companies unrelated to GFI.

## FIRST CLAIM FOR RELIEF

### (Conversion)

### Against Defendants Miro, Wise, Covey, Norman, Teran, Western Properties, Solid Gold, and CIC

51.    The allegations contained in paragraphs 1 through 50 above are hereby incorporated by reference as if fully set forth herein.

52.    By improperly obtaining and using property owned by GFI, Miro, Wise, Covey, Norman, Teran, Western Properties, Solid Gold, and CIC have converted GFI's property to their own benefit.

53.    The property improperly converted by Miro, Wise, Covey, Norman, Teran, Western Properties, Solid Gold, and CIC is the monies unlawfully transferred out of GFI's bank accounts to Western Properties and Solid Gold.

54.     Miro, Wise, Covey, Norman, Teran, Western Properties, Solid Gold, and CIC unlawfully converted GFI's property by transferring it to Western Properties and Solid Gold.  Defendants, among other ways, unlawfully converted this property by initiating wire transfers of money from the bank accounts of GFI to the bank accounts of Western Properties and Solid Gold.

55.     As a direct result of the actions of Miro, Wise, Covey, Norman, Teran, Western Properties, Solid Gold, and CIC, GFI has suffered damages in an amount to be proven at trial.

56.     The above actions of Miro, Wise, Covey, Norman, Teran, Western Properties, Solid Gold, and CIC were willful, wanton, and malicious, and justify an award of exemplary and punitive damages.

57.     GFI is informed and believes, and based thereon alleges, that Miro, Wise, Covey, Norman, Teran, Western Properties, Solid Gold, and CIC may have misappropriated other monies and information and converted them to their own personal use, the full extent to which GFI is presently unaware.  GFI hereby gives notice that it reserves the right to amend this Complaint to include any other wrongful acts of Miro, Wise, Covey, Norman, Teran, Western Properties, Solid Gold, and CIC that GFI discovers in the course of this legal action and any further damages that it has suffered as a result.

## SECOND CLAIM FOR RELIEF

### (Fraud)

### Against Defendants Miro, Wise, Covey, Norman, Teran, Western Properties, Solid Gold, and CIC

58.     The allegations contained in paragraphs 1 through 57 above are hereby incorporated by reference as if fully set forth herein.

59.     Miro, Wise, Covey, Norman, and Teran misrepresented to GFI that some of the GFI monies transferred to Western Properties and Solid Gold were for the repayment of intercompany loans.

60.    The misrepresentations made by Miro, Wise, Covey, Norman, and Teran were material to GFI's transactions and business decisions.

61.    Miro, Wise, Covey, Norman, and Teran did not intend to actually repay any intercompany loans when they made the misrepresentations because no intercompany loans actually existed.

62.    Miro, Wise, Covey, Norman, and Teran intended that GFI rely on the misrepresentations they made.

63.    GFI reasonably relied on the misrepresentations of Miro, Wise, Covey, Norman, and Teran.

64.    GFI did not repay any intercompany loans because the loans did not exist and Miro, Wise, Covey, Norman, and Teran knew this at the time the wire transfers were recorded in GFI's general ledger.

65.    GFI was harmed as a result of the misrepresentations made by Miro, Wise, Covey, Norman, and Teran in an amount to be proven at trial, but which is believed to exceed $1.1 million.

66.    GFI's reliance on the misrepresentations of Miro, Wise, Covey, Norman, and Teran was a substantial factor in causing its harm.

67.    Exemplary or punitive damages in addition to actual damages may be imposed for fraud.  GFI is informed and believes that the misrepresentations made by Miro, Wise, Covey, Norman, and Teran demonstrated fraud, oppression, and malice, and the intent to deprive GFI of its respective rights, thus justifying an award of punitive and exemplary damages in a sum according to proof.

### THIRD CLAIM FOR RELIEF

**(Breach of Fiduciary Duty)**

**Against Defendants Miro, Wise, Covey, Norman, and Teran**

68.    The allegations contained in paragraphs 1 through 67 above are hereby incorporated by reference as if fully set forth herein.

16

**COMPLAINT**

69.     As former officers of GFI, Miro, Wise, and Covey stood in a fiduciary relationship of trust and confidence with GFI.  Miro, Wise, and Covey owed a fiduciary duty of care and loyalty to GFI.

70.     As directors of GFI, Teran and Norman stand in a fiduciary relationship of trust and confidence with GFI.  Teran and Norman owe a fiduciary duty of care and loyalty to GFI.

71.     Miro, Wise, Covey, Norman, and Teran knowingly acted against GFI's interest in connection with the Western Properties Scheme and the Solid Gold Scheme.  GFI did not consent to or authorize the transfers of funds.

72.     In acting as alleged in this Complaint, Miro, Wise, Covey, Norman, and Teran did not exercise the care or loyalty required of them.  As a proximate result of the conduct that is alleged above, GFI has been damaged in an amount to be proven at trial, but which is believed to exceed $1.1 million.

73.     Exemplary or punitive damages in addition to actual damages may be imposed for the breach of a fiduciary relationship.  GFI is informed and believes that by breaching their fiduciary duties in the manner that they did, Miro, Wise, Covey, Norman, and Teran demonstrated fraud, oppression, and malice, and the intent to deprive GFI of its respective rights, thus justifying an award of punitive and exemplary damages in a sum according to proof.

## FOURTH CLAIM FOR RELIEF

### (Breach of Duty of Loyalty - Cal. Labor Code §§ 2854 and 2859)

### Against Defendants Miro, Wise, Covey, Norman, and Teran

74.     The allegations contained in paragraphs 1 through 73 above are hereby incorporated by reference as if fully set forth herein.

75.     By virtue of and during their employment with GFI and pursuant to California Labor Code sections 2854 and 2859, as employees of GFI, Miro, Wise, Covey, Norman, and Teran owed a duty of care, diligence, skill and loyalty to GFI.

**COMPLAINT**

76.     GFI is informed and believes, and based thereon alleges, that Miro, Wise, Covey, Norman, and Teran breached their duty to GFI by, *inter alia*, engaging in a scheme to divert the assets of GFI for the benefit of themselves and to the detriment of GFI.

77.     As a result of these breaches, GFI has been injured and will continue to be damaged by the conduct of Miro, Wise, Covey, Norman, and Teran in an amount to be proven at the time of trial, but in the excess of the minimum jurisdictional amount of this Court.

78.     GFI is informed and believes, and based thereon alleges, that the conduct of Miro, Wise, Covey, Norman, and Teran was intentional and done with malice, fraud, and oppression.  GFI is further informed and believes, and based thereon alleges, that in engaging in the aforesaid conduct, Miro, Wise, Covey, Norman, and Teran knew they were acting in breach of the duty of loyalty which they owed to GFI. Nevertheless, as herein alleged, Miro, Wise, Covey, Norman, and Teran intentionally, and with conscious disregard of the rights of GFI, set upon a course of conduct which placed their interests above GFI's at a time when they were in GFI's employ.  As a consequence of this conduct, GFI is entitled to an award of punitive or exemplary damages.

## FIFTH CLAIM FOR RELIEF

### (Breach of Duty of Care)

### Against Defendants Miro, Wise, Covey, Norman, and Teran

79.     The allegations contained in paragraphs 1 through 78 above are hereby incorporated by reference as if fully set forth herein.

80.     Miro, Wise, Covey, Norman, and Teran, as directors and officers of GFI, each owed a duty of care to GFI and were required to serve in good faith and in a manner that is in the best interests of GFI.

81.     Miro, Wise, Covey, Norman, and Teran breached their fiduciary duty of care to GFI by scheming to acquire and raid GFI of its corporate funds, and

**COMPLAINT**

transferring these funds to Solid Gold and Western Properties, and using these funds for their own personal gain and to the detriment of GFI.

82.     As a proximate result of Miro, Wise, Covey, Norman, and Teran's breaches of their fiduciary duty of care, GFI has sustained and will continue to sustain damages.  The precise nature and amount of such accrued and continuing damages is not presently known to GFI and cannot be ascertained at this time.

83.     The actions of Miro, Wise, Covey, Norman, and Teran were willful, wanton and malicious, and justify an award of exemplary and punitive damages.

## SIXTH CLAIM FOR RELIEF

### (Breach of Duty of Loyalty)

### Against Defendants Miro, Wise, Covey, Norman, and Teran

84.     The allegations contained in paragraphs 1 through 83 above are hereby incorporated by reference as if fully set forth herein.

85.     Miro, Wise, Covey, Norman, and Teran, as directors and officers of GFI, each owed a duty of loyalty to GFI which includes an affirmative duty to protect the interests of GFI, an obligation to refrain from conduct which would injure GFI and its shareholders and a duty to refrain from self-dealing or using their positions for personal profit at the expense of GFI.

86.     Miro, Wise, Covey, Norman, and Teran breached their fiduciary duty of loyalty to GFI by scheming to acquire and raid GFI of its corporate funds, and transferring these funds to Solid Gold and Western Properties, and using these funds for their own personal gain and to the detriment of GFI.

87.     As a proximate result of Miro, Wise, Covey, Norman, and Teran's breaches of their fiduciary duty of loyalty, GFI has sustained and will continue to sustain damages.  The precise nature and amount of such accrued and continuing damages is not presently known to GFI and cannot be ascertained at this time.

19

**COMPLAINT**

88.     Accordingly, this Court should order Miro, Wise, Covey, Norman, and Teran to disgorge al profits, benefits and other compensation obtained by them, and each of them, from their wrongful conduct and fiduciary breaches described herein.

89.     Furthermore, the actions of Miro, Wise, Covey, Norman, and Teran were willful, wanton and malicious, and justify an award of exemplary and punitive damages.

## SEVENTH CLAIM FOR RELIEF

### (Breach of Contract)

### Against Defendant Micro-Tender

90.     The allegations contained in paragraphs 1 through 89 above are hereby incorporated by reference as if fully set forth herein.

91.     Pursuant to the terms of the Patent Agreement, Micro-Tender, as the licensor ("Licensor") expressly represented and warranted that :

    a.   "Licensor is the owner of the Licensed Patents (as defined below) and has the right to grant exclusive licenses, releases and covenants not to sue thereunder."  *See* Exhibit C, ¶ A.

    b.   "Ownership of Licensed Patents.  Licensor represents and warrants: (a) that it either owns or has the right to license the Licensed Patents; (b) that it has the right to grant the exclusive license granted hereunder, (c) that it has the right to enter into this Agreement, and (d) that there are not presently in effect any previously granted licenses under the Licensed Patents with respect to the Licensed Field of Use."  *Id.*, ¶ 5.1.

92.      GFI has performed all of its contractual duties and obligations under the Patent Agreement in having paid the requisite consideration and royalty payments to Micro-Tender.

93.     Micro-Tender has breached its contractual duties under the Patent Agreement by allowing each of the patents to lapse, and by accepting royalty payments from GFI for lapsed patents.

94.     As a direct and proximate result of Micro-Tender's breach of its contractual duties and obligations as aforesaid, GFI has suffered and continues to suffer substantial harm and injury in that it has been wrongfully divested of its corporate funds in an amount according to proof at trial.

## EIGHTH CLAIM FOR RELIEF

### (Unjust Enrichment)

### Against Defendants Teran and Micro-Tender

95.     The allegations contained in paragraphs 1 through 94 above are hereby incorporated by reference as if fully set forth herein.

96.     Pursuant to the terms of the Patent Agreement, Micro-Tender was required to pay maintenance fees on the patents.

97.     In exchange for GFI's licensing of the patents, GFI, pursuant to the Patent Agreement, was obligated to pay Micro-Tender royalty fees relating to the patents.

98.     Micro-Tender did not pay the maintenance fees on the patents and accepted royalty payments for patents that had lapsed.

99.     By GFI's payment of the patent maintenance fees and by collecting royalty fees on lapsed payments, Teran and Micro-Tender were unjustly enriched at the expense of and to the detriment of GFI or while GFI was unjustly deprived.

100.   GFI seeks restitution from Teran and Micro-Tender and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by Teran and Micro-Tender from their wrongful conduct.

## NINTH CLAIM FOR RELIEF

### (Conspiracy to Convert)

### Against Defendants Miro, Wise, Covey, and Norman

101.   The allegations contained in paragraphs 1 through 100 above are hereby incorporated by reference as if fully set forth herein.

102.   Miro, Wise, Covey, and Norman agreed to and operated a common plan to convert GFI's property to their own benefit through the above-described Western Properties Scheme.

103.   The wrongful acts Miro, Wise, Covey, and Norman did in furtherance of their common plan to convert GFI's property to their own benefit are as follows. Miro, Wise, Covey, and Norman participated in the conspiracy by, among other things, transferring or causing to be transferred GFI's monies under the guise that the transfers constituted the repayment of intercompany loans.

104.   GFI has been damaged by Miro, Wise, Covey, and Norman's agreement and operation of their common plan because GFI's property has been unlawfully converted.  GFI's damages are in an amount according to proof, but are believed to exceed $4,179,245.26.

105.   Miro, Wise, Covey, and Norman's conduct was fraudulent and malicious, thus entitling GFI to punitive or exemplary damages in an amount sufficient to deter Miro, Wise, Covey, and Norman from such wrongful conduct in the future.

## TENTH CLAIM FOR RELIEF

### (Conspiracy to Convert)

### Against Defendants Miro, Wise, Covey, and Teran

106.   The allegations contained in paragraphs 1 through 105 above are hereby incorporated by reference as if fully set forth herein.

107.   Miro, Wise, Covey, and Teran agreed to and operated a common plan to convert GFI's property to their own benefit through the above-described Solid Gold Scheme.

108.   The wrongful acts Miro, Wise, Covey, and Teran did in furtherance of their common plan to convert GFI's property to their own benefit are as follows. Miro, Wise, Covey, and Teran participated in the conspiracy by, among other things, transferring or causing to be transferred GFI's monies under the guise that the transfers constituted the repayment of intercompany loans.

109.   GFI has been damaged by Miro, Wise, Covey, and Teran's agreement and operation of their common plan because GFI's property has been unlawfully converted.  GFI's damages are in an amount according to proof, but are believed to exceed $325,080.00.

110.   Miro, Wise, Covey, and Teran's conduct was fraudulent and malicious, thus entitling GFI to punitive or exemplary damages in an amount sufficient to deter Miro, Wise, Covey, and Teran from such wrongful conduct in the future.

## ELEVENTH CLAIM FOR RELIEF

**(Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c))**

**Against Defendants Miro, Wise, Covey, and Norman**

111.   The allegations contained in paragraphs 1 through 110 above are hereby incorporated by reference as if fully set forth herein.

### *The RICO Enterprise*

112.   Miro, Wise, Covey, and Norman are capable of holding a legal or beneficial interest in property and are, therefore, each a "person" within the meaning of 18 U.S.C. 1961(3).

113.   Miro, Wise, Covey, and Norman, acting in concert, comprise an association in fact, referred to herein as the Western Properties Scheme

114.   The continuing association formed by these parties constitutes a RICO enterprise within the meaning of 18 U.S.C. § 1961(4).

### *Pattern of Racketeering Activity*

115.   From in or about January 2013, and continuing to and through June 2013, Miro, Wise, Covey, and Norman, acting in concert, unlawfully, knowingly, and intentionally conducted and participated in the Western Properties Scheme, through a pattern of racketeering activity that includes devising and intending to devise and execute a scheme and artifice to defraud and to obtain money or property by means of false and fraudulent pretenses, representations, and promises, through the use of

interstate wires,  while possessing property obtained by theft, conversion or fraud, having a value of more than $5,000.

116.   Specifically, Miro, Wise, Covey, and Norman transferred or caused to be transferred an aggregate $4,179,245.26 from GFI bank accounts to Western Properties, via no less than 26 wire transfers.

117.   This racketeering activity was performed by Miro, Wise, Covey, and Norman in furtherance of their scheme: (1) to obtain and convert wrongfully and unlawfully GFI's monies; (2) to defraud GFI through a series of phantom loans; and (3) to falsify loan transactions.

118.   Miro, Wise, Covey, and Norman have violated 18 U.S.C. § 1962(c) by conducting or participating in the conduct of the enterprise's affairs through a pattern of racketeering activity.

### *Use of Interstate Wires*

119.   Miro, Wise, Covey, and Norman, acting in concert, have unlawfully, knowingly, and intentionally engaged in wire fraud under the Federal Wire Fraud Statute, 18. U.S.C. § 1343.

120.   Miro, Wise, Covey, and Norman committed wire fraud by causing GFI to wire transfer funds in interstate commerce that were diverted and converted by Miro, Wise, Covey, and Norman.  Moreover, information concerning these fraudulent transactions was sent by electronic transmission through interstate commerce.

121.   As a direct and proximate result of Miro, Wise, Covey, and Norman acting in concert and their willful and unlawful participation in and conduct of the Western Properties Scheme, through a pattern of racketeering in violation of 18 U.S.C. § 1962(c), GFI has been injured in its business and property in that it has been unlawfully deprived of its monies.

122.   Pursuant to 18 U.S.C. § 1964, GFI is entitled to damages, including treble damages, for the injuries, and is entitled to costs of the suit, including reasonable attorneys' fees.

123.   GFI seeks damages in an amount to be proved, as well as attorneys' fees and costs to the extent allowed by law.

## TWELFTH CLAIM FOR RELIEF

**(Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d))**

**Against Defendants Miro, Wise, Covey, and Norman**

124.   The allegations contained in paragraphs 1 through 123 above are hereby incorporated by reference as if fully set forth herein.

125.   Miro, Wise, Covey, and Norman, acting in concert, have unlawfully, fraudulently, and intentionally conspired together to violate 18 U.S.C. § 1962(c).

126.   Specifically, Miro, Wise, Covey, and Norman, acting in concert, have unlawfully, fraudulently, and intentionally conspired together to: (1) obtain and convert wrongfully and unlawfully GFI's monies; (2) defraud GFI through a series of phantom loans; and (3) falsify loan transactions.

127.   As a direct and proximate result of Miro, Wise, Covey, and Norman's wrongful and unlawful actions described herein, GFI has sustained actual damages in that it has been unlawfully deprived of its monies.  GFI has also incurred attorneys' fees to seek relief from these injuries.

## THIRTEENTH CLAIM FOR RELIEF

**(Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c))**

**Against Defendants Miro, Wise, Covey, and Teran**

128.   The allegations contained in paragraphs 1 through 127 above are hereby incorporated by reference as if fully set forth herein.

### *The RICO Enterprise*

129.   Miro, Wise, Covey, and Teran are capable of holding a legal or beneficial interest in property and are, therefore, each a "person" within the meaning of 18 U.S.C. 1961(3).

130.   Miro, Wise, Covey, and Teran, acting in concert, comprise an association in fact, referred to herein as the Solid Gold Scheme.

131.   The continuing association formed by these parties constitutes a RICO enterprise within the meaning of 18 U.S.C. § 1961(4).

**Pattern of Racketeering Activity**

132.   From in or about January 2014, and continuing to and through May 2014, Miro, Wise, Covey, and Teran, acting in concert, unlawfully, knowingly, and intentionally conducted and participated in the Solid Gold Scheme, through a pattern of racketeering activity that includes devising and intending to devise and execute a scheme and artifice to defraud and to obtain money or property by means of false and fraudulent pretenses, representations, and promises, through the use of interstate wires,  while possessing property obtained by theft, conversion or fraud, having a value of more than $5,000.

133.   Specifically, Miro, Wise, Covey, and Teran transferred or caused to be transferred an aggregate $325,080.00 from GFI bank accounts to Solid Gold.

134.   This racketeering activity was performed by Miro, Wise, Covey, and Teran in furtherance of their scheme to: (1) obtain and convert wrongfully and unlawfully GFI's monies; (2) defraud GFI through a series of phantom loans; and (3) falsify loan transactions.

135.   Miro, Wise, Covey, and Teran have violated 18 U.S.C. § 1962(c) by conducting or participating in the conduct of the enterprise's affairs through a pattern of racketeering activity.

**Use of Interstate Wires**

136.   Miro, Wise, Covey, and Teran, acting in concert, have unlawfully, knowingly, and intentionally engaged in wire fraud under the Federal Wire Fraud Statute, 18. U.S.C. § 1343.

137.   Miro, Wise, Covey, and Teran committed wire fraud by causing GFI to wire transfer funds in interstate commerce that were diverted and converted by Miro,

Wise, Covey, and Teran.  Moreover, information concerning these fraudulent transactions was sent by electronic transmission through interstate commerce.

138.   As a direct and proximate result of Miro, Wise, Covey, and Teran acting in concert and their willful and unlawful participation in and conduct of the *Solid Gold Scheme*, through a pattern of racketeering in violation of 18 U.S.C. § 1962(c), GFI has been injured in its business and property in that it has been unlawfully deprived of its monies.

139.   Pursuant to 18 U.S.C. § 1964, GFI is entitled to damages, including treble damages, for the injuries, and is entitled to costs of the suit, including reasonable attorneys' fees.

140.   GFI seeks damages in an amount to be proved, as well as attorneys' fees and costs to the extent allowed by law.

## FOURTEENTH CLAIM FOR RELIEF

**(Violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d))**

**Against Defendants Miro, Wise, Covey, and Teran**

141.   The allegations contained in paragraphs 1 through 140 above are hereby incorporated by reference as if fully set forth herein.

142.   Miro, Wise, Covey, and Teran, acting in concert, have unlawfully, fraudulently, and intentionally conspired together to violate 18 U.S.C. § 1962(c).

143.   Specifically, Miro, Wise, Covey, and Teran, acting in concert, have unlawfully, fraudulently, and intentionally conspired together to: (1) obtain and convert wrongfully and unlawfully GFI's monies; (2) defraud GFI through a series of phantom loans; and (3) falsify loan transactions.

As a direct and proximate result of Miro, Wise, Covey, and Teran's wrongful and unlawful actions described herein, GFI has sustained actual damages in that it has been unlawfully deprived of its monies.  GFI has also incurred attorneys' fees to seek relief from these injuries.

**PRAYER FOR RELIEF**

1

2          WHEREFORE, GFI prays for judgment in its favor and an Order granting the

3   following relief against Defendants, and each of them:

4          1.       For damages in an amount according to proof at the time of trial;

5          2.       For punitive or exemplary damages in an amount sufficient to punish or

6   set an example of defendants;

7          3.       For reasonable attorneys' fees, where authorized by statute;

8          4.       For restitution of the amounts by which defendants have been unjustly

9   enriched;

10         5.       For costs of suit incurred herein; and

11         6.       For such other and further relief as this Court deems just and proper.

12

13  DATED:  February 6, 2015          BLANK ROME LLP

14

15

16                                    By: /s/ Cheryl S. Chang
                                          Mark S. Greenfield
17                                        Cheryl S. Chang
                                          Jessica A. McElroy
18                                    Attorneys for Plaintiff
                                      GLOBAL FOOD INNOVATIONS, INC.